ROANOKE CHOWAN REGIONAL HOUSING AUTHORITY, PLAINTIFF v. MALACHI AND CARRIE VAUGHAN, DEFENDANTS

No. 861DC11

(Filed 17 June 1986)

1. **Landlord and Tenant § 13; Social Security and Public Welfare § 1— lease of public housing—sufficiency of notice of termination**

   There was no merit to defendants' contention that plaintiff's notice of termination of a lease in public housing was fatally defective (1) because it incorrectly cited § 7 of the Dwelling Lease as grounds for termination, since the notice correctly spelled out that the grounds for termination were that defendants allowed individuals not named on the lease to reside in their apartment, and (2) because the notice did not inform defendants of their right to request a grievance hearing, since defendants received the benefit of a full jury trial in state court.

2. **Landlord and Tenant § 13; Social Security and Public Welfare § 1— lease of public housing—good cause for termination—sufficiency of evidence**

   Evidence was sufficient to establish that good cause existed to warrant termination of defendants' lease in public housing where it tended to show that members of defendants' family living in the apartment and not listed in the Dwelling Lease were not guests or visitors, and this constituted a breach of the lease agreement.

APPEAL by defendants from *Long, Nicholas, Judge*. Judgment entered 13 August 1985 in District Court, HERTFORD County. Heard in the Court of Appeals 8 May 1986.

On 1 June 1982, defendants were placed in a public housing unit administered by plaintiff. On 1 May 1985, plaintiff instituted an action in magistrate's court for summary ejectment (85CVM 229), claiming defendants breached the lease by allowing "numerous individuals not permitted under the lease to reside" in their three-bedroom apartment. Defendants were ordered to appear before a magistrate on 20 May 1985. Defendants contacted Legal Services of the Coastal Plains and obtained counsel. On 17 May 1985 defendants filed an answer which denied all pertinent allegations in the complaint. From a judgment entered 20 May 1985 in favor of plaintiff, defendants appealed to district court. On 28 May 1985, defendants obtained a stay of execution on the judgment for summary ejectment. On or about 12 August 1985, the matter was heard before a jury. The jury answered "yes" to the issue did the defendants breach the dwelling lease of plaintiff Roanoke Chowan Regional Housing Authority. Judge Long entered judgment in accordance with the jury's verdict. Defendants appealed. On 22 August 1985, execution on the judgment for summary ejectment was again stayed.

*Plaintiff appellee gave written notice to the North Carolina Court of Appeals of its decision not to file a brief and not to appear for oral arguments.*

*Legal Services of the Coastal Plains, by Marcus W. Williams, for defendant appellants.*

JOHNSON, Judge.

The evidence presented tended to show the following: defendants, Carrie Vaughan and Malachi Vaughan, three daughters and a granddaughter were certified as eligible for public housing. On 1 June 1982, they moved into public housing administered by plaintiff. Because neither Carrie nor Malachi Vaughan can read or write, Ms. Betty Jane Vaughan, a daughter and tenant at the time, signed the lease agreement. The Vaughans have resided continuously in the three-bedroom apartment located at 622 South Drive in Murfreesboro since June 1982.

On 7 February 1985, Ms. Marilyn C. Powell, Food Stamp Supervisor for Hertford County Social Services, received a January 1985 food stamp report from the Vaughans, which contained an application for food stamps for twelve people. Ms. Powell reported this information to plaintiff. Mrs. Rosaline Harris, Eligibility Specialist and fraud worker for the Department of Social Services of Hertford County, investigated and determined that ten or twelve persons lived at the Vaughan residence.

On 20 February 1985, Mr. Leroy Hill, then Acting Executive Director of the Roanoke Chowan Regional Housing Authority, met with defendants and informed them that, based upon the information he had received from the Department of Social Services, he would take action to evict them. He did not apprise defendants of their right to request a grievance hearing.

In a letter to defendants dated 21 February 1985 and entitled "TERMINATION NOTICE," Leroy Hill gave defendants notice that their lease would be terminated as of 23 March 1985, showing as grounds for the termination "Section 7 of Lease Agreement[:] by allowing individuals not named on the lease to reside in your apartment." The letter concluded as follows:

> You have the right to defend this action in Court if any Court action is brought.

> You have ten (10) days within which to discuss the proposed termination of tenancy with the Housing Authority.

The letter did not inform defendants of their right to a grievance hearing.

The defendants each testified that they thought the lease allowed guests. Carrie Vaughan testified that in mid-January 1985, defendants allowed their daughter and their grandchildren to visit with them for two weeks. Defendant Carrie Vaughan testified that she did not intend to receive anything of value for their accommodation, that she did not herself apply or authorize her visiting daughter to apply for additional food stamps, that she tried to return the increased allotment of food stamps and refused to apply for food stamps, even for those under the prior allotment, in all subsequent months since the increased allotment was received in March 1985.

In defendants' first Assignment of Error defendants contend that plaintiff's fatal noncompliance with the termination of tenancy procedures precluded the court from having subject matter jurisdiction and, therefore, their motion to dismiss at the outset of the trial was improvidently denied. We disagree.

We agree with defendants that special legal safeguards articulated in the Housing and Urban Development (HUD) regulations must be adhered to before a tenant of a Public Housing Authority (PHA) can be evicted. Those regulations governing termination of a lease provide, in pertinent part, as follows:

(1) The lease shall set forth the procedures to be followed by the PHA and by the tenant in terminating the lease which shall provide:

   (1) That the PHA shall not terminate or refuse to renew the lease other than for serious or repeated violation of material terms of the lease . . . or for other good cause.

   (2) That the PHA shall give written notice of termination of the lease. . . .

   (3) That the notice of termination to the tenant shall state reasons for the termination, shall inform the tenant of his right to make such reply as he may wish and of his right to request a hearing in accordance with the PHA's grievance procedure.

24 C.F.R. sec. 966.4(1) (1985). "Grievance" is defined as "any dispute which a tenant may have with respect to PHA action or failure to act in accordance with the individual tenant's lease or PHA regulations, which adversely affect the individual tenant's rights, duties, welfare or status." 24 C.F.R. sec. 966.53(a).

Section 12 of defendants' Dwelling Lease states as follows:

12. TERMINATION OF LEASE.

. . . .

This lease may be terminated by the Management at any time by giving written notice as set forth in Section 11. Such notice shall be given in accordance with the following.

. . . .

Such notice may only be given for good cause, such as non-payment of rent, serious or repeated violations of the material terms of the lease. Such notice shall state the reasons for the termination, shall inform the tenant of his/her right to make such a reply as he/she may wish and his/her right to request a hearing in accordance with the Grievance Procedure. At the time of lease termination, all charges shall become due and collectible.

We hold that the above provision of the lease is in strict compliance with the above-stated HUD regulation governing termination of a lease.

[1] Defendants contend that, even though the lease contains a precise statement of the necessary termination procedure as required by the HUD regulations, notice of termination was still fatally defective because the written notice defendants received failed to satisfy Section 12 of the Dwelling Lease. Specifically, defendants contend that the 21 February 1985 letter of notice of termination contained two defects: (1) the grounds asserted as the basis for termination incorrectly cite Section 7 of the Dwelling Lease and (2) a statement informing defendants of their right to request a grievance hearing was completely omitted.

Although the letter of notice of termination incorrectly cited Section 7 of the lease, the specific grounds for termination are also stated, to wit: "by allowing individuals not named on the lease to reside in your apartment." This statement controls and is sufficient to put defendants on notice regarding the specific lease provision deemed to have been violated.

The Dwelling Lease, Section 12, does provide that the mandatory written notice of termination "shall inform the tenant of his/her right to . . . request a hearing in accordance with the Grievance Procedure." Notice is a due process consideration, required under the fourteenth amendment to the United States Constitution and art. 1, sec. 19 of the state constitution. *City of Randleman v. Hinshaw*, 267 N.C. 136, 140, 147 S.E. 2d 902, 905 (1966) (citing N.C. Const. of 1868, art. 1, sec. 17). A tenant in a publicly subsidized housing project is entitled to due process protection. *Swann v. Gastonia Housing Authority*, 675 F. 2d 1342 (4th Cir. 1982); *Caulder v. Durham Housing Authority*, 433 F. 2d 998

(4th Cir. 1970). Before an eviction determination is administratively made, due process requires, succinctly stated:

> (1) timely and adequate notice detailing the reasons for a proposed termination,
>
> (2) an opportunity on the part of the tenant to confront and cross-examine adverse witnesses,
>
> (3) the right of a tenant to be represented by counsel, provided by him to delineate the issues, present the factual contentions in an orderly manner, conduct cross-examination and generally to safeguard his interests,
>
> (4) a decision, based on evidence adduced at the hearing, in which the reasons for decision and the evidence relied on are set forth, and
>
> (5) an impartial decision maker.

*Caulder, supra,* at 1004, *citing Goldberg v. Kelly,* 397 U.S. 254, 25 L.Ed. 2d 287, 90 S.Ct. 1011 (1970).

An eviction proceeding in a North Carolina state court pursuant to the North Carolina eviction statute "will provide the tenant with all the process that is due." *Swann, supra,* at 1348. A hearing before the housing agency therefore is not constitutionally required. *Id.* Defendants cannot claim injury resulting from the omission of a statement in the letter of notice of termination informing defendants of their right to request a grievance hearing when they received the benefit of a full jury trial in state court. We hold no reversible error occurred.

Due process expresses the requirement of fundamental fairness. *Lassiter v. Department of Social Services of Durham County, North Carolina,* 452 U.S. 18, 68 L.Ed. 2d 640, 101 S.Ct. 2153 (1981). Our holding does not offend due process when due process is couched in terms of fundamental fairness. These tenants had notice of their right to air their grievance pursuant to the Grievance Procedure as stated in the Dwelling Lease, section 13, which was signed by defendants' daughter who, unlike defendants, could read and write. Further, the project is required to post the Grievance Procedure in the project's office at all times, in its entirety. Defendants had notice of their right to request a

grievance hearing. Further, defendants were duly notified of the state eviction proceeding. Defendants had adequate time to obtain counsel to fully litigate whether good cause existed to terminate their lease. A decision was reached, based on the evidence presented before a jury of twelve impartial decision makers. Defendants' constitutional right to due process was well protected. The injury claimed by defendants would be more appropriately addressed as a breach of the Dwelling Lease, wherein plaintiff specifically contracted to provide written notice in compliance with Section 12. Defendants' first Assignment of Error is overruled.

[2]   In defendants' second Assignment of Error, they contend the court erred in denying their motions for a directed verdict and judgment notwithstanding the verdict. Specifically, defendants contend that there was no evidence sufficient to establish that good cause existed to warrant a termination of tenancy. Defendants' argument is without merit.

A motion for a directed verdict presents the question of law whether the plaintiff's evidence was sufficient for submission to the jury. *Stewart v. Nation-Wide Check Corp.*, 279 N.C. 278, 283, 182 S.E. 2d 410, 413 (1971). The propriety of granting a motion for judgment notwithstanding the verdict is determined by the same considerations as that of a motion for a directed verdict. *Investment Properties of Asheville, Inc. v. Allen*, 281 N.C. 174, 184, 188 S.E. 2d 441, 447 (1972), *vacated on other grounds on rehearing*, 283 N.C. 277, 196 S.E. 2d 262 (1973). The trial judge must determine whether the evidence was sufficient, taken in the light most favorable to the plaintiff and giving it the benefit of every reasonable inference which can be drawn therefrom. *Sawyer v. Shackleford*, 8 N.C. App. 631, 636, 175 S.E. 2d 305, 309 (1970).

We have carefully reviewed the evidence before the court. We find there was ample evidence from which one could reasonably infer that the members of defendants' family living in the apartment not listed in the Dwelling Lease were not guests or visitors, and that this constituted a breach of the lease agreement. Whether these family members were temporary guests as opposed to unauthorized persons residing with defendants was a question of fact properly to be decided by the jury. This Assignment of Error is overruled.

In defendants' last Assignment of Error they contend the court erred (1) by failing to rule on their objection at trial to plaintiff's closing argument and (2) by later refusing to poll the jury so that closing arguments could be reconstructed.

In defendants' brief they maintain that during plaintiff's closing argument they asserted a specific objection to plaintiff's attorney's statement that "the defendants were thieves, who had been caught and who should be evicted" (quoting from defendants' brief). They now claim unfair prejudice resulting from the court's refusal to rule or otherwise comment upon their objection.

On 26 November 1985, a hearing was conducted for the purpose of settling the record on appeal in accordance with Rule 11(c), N.C. Rules App. P. The court ordered what narrative of arguments and evidence presented at trial was to be included in the record on appeal. This narrative of the transcript is devoid of a closing argument, or any objection thereto. Matters discussed in the brief outside the record will not be considered on appeal. *Elliott v. Goss*, 254 N.C. 508, 509, 119 S.E. 2d 192, 193 (1961). This Court will not speculate as to matters outside the record. *C. C. T. Equipment Co. v. Hertz Corp.*, 256 N.C. 277, 123 S.E. 2d 802 (1962).

At the 26 November 1985 hearing to settle the record on appeal, defendants moved the court to poll the jury for the purpose of reconstructing closing arguments. Defendants so moved the court because the recorded transcript of the August 1985 trial did not contain the closing arguments. We find no abuse of discretion in the court's failure to attempt to poll a jury that had been discharged. Defendants' third Assignment of Error is overruled.

No error.

Judges WEBB and WHICHARD concur.