An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-728

NORTH CAROLINA COURT OF APPEALS

Filed: 18 February 2014

BRADLEY JOAQUIN DEWITT,
    Plaintiff,

    v.                                      Transylvania County
                                            No. 12 CVD 426
LAURA ANNE DEWITT,
    Defendant.


Appeal by defendant from order entered 21 December 2012 by Judge Mack Brittain in Transylvania County District Court. Heard in the Court of Appeals 20 November 2013.

*No brief filed on behalf of plaintiff-appellee.*

*Donald H. Barton, P.C., by Donald H. Barton, for defendant-appellant.*


HUNTER, JR., Robert N., Judge.


Laura Anne Dewitt ("Defendant" or "Mother") appeals from a child custody order granting joint legal custody to her and Bradley Joaquin Dewitt ("Plaintiff" or "Father"), as well as primary physical custody to Mother and secondary physical custody to Father. Mother argues that the trial court erred by: (1) denying Mother's proffer of Defendant's Exhibit 1; and (2)

closing the proceedings before Mother's witness appeared. We affirm.

## I. Facts & Procedural History

On 8 May 2012, Father filed a complaint for custody of the parties' minor child in Henderson County. Following a motion to transfer venue and a stipulation to venue, the case was removed to Transylvania County. The trial court heard testimony and received exhibits from both parties at hearings before the Honorable Mack Brittain in Transylvania County District Court on 22 October, 24 October, and 12 December 2012. The trial court's uncontested findings of fact showed the following.

Father and Mother met while both were serving in the United States Navy and married on 12 February 2011. Father's duties in the Navy required him to be away from home for "all but a few months of the marriage." The parties separated on 29 November 2011. On 17 January 2012, the parties' minor child was born.[1]

Mother had sole custody of the child from birth to the time of the hearings. Although Father sought to be a part of the child rearing, Mother refused to allow him to participate except for hourly visits supervised by Mother and members of her

---

[1] Although the 21 December 2012 order mistakenly lists 7 January 2012, the pleadings and testimony of the parties make it clear that 17 January 2012 is the child's birthday.

family. At the time of the hearings, Mother lived with her parents in Transylvania County and worked part time at the Food Matters Market. Father lived in San Diego, California and was still on active duty with the United States Navy. Father had been paying $300 per month in child support and provided health insurance for the child. The trial court also found the following undisputed facts:

4. Father suffered with the abuse of alcohol during the marriage. Father sought and completed counseling regarding his alcohol use/abuse and does not appear to continue the abuse of alcohol. Father has never used alcohol in the presence of the minor child and father's past abuse of alcohol does not appear likely to effect the best interests of the minor child. Mother has suffered with mental health issues, specifically depression, in the past. Mother sought and completed counseling regarding her mental health issues and does not appear to suffer ongoing mental health issues. Mother's past mental health issues do not appear to have effected the best interests of the minor child nor does it appear the past issues are likely to effect the child's best interests in the future.

. . . .

11. Mother alleged that father subjected mother to domestic violence during the marriage. The Court is not able to determine whether or not domestic violence occurred between the parties. Further, there has not been sufficient evidence to show that the child has been or will be

effected by any past acts of domestic violence.

12. The parties have not been able to effectively communicate with one another regarding visitation or other issues related to the child.

At the 24 October 2012 hearing, during Mother's testimony, her counsel offered into evidence Defendant's Exhibit 1. The exchange was as follows:

> [Mother's Counsel:] I will show you Defendant's Exhibit 1. Do you recognize that as a series of exchanges on a Facebook page? (Tenders)
>
> [Mother:] (Upon review) Yes, sir.
>
> [Mother's Counsel:] What is this and how did you obtain it?
>
> [Mother:] This is a message between Brad and a woman, Ally Hoover. I obtained it through his -- accessing his Facebook page, as I knew all his passwords for his log-ins. When we were married, he gave me permission to log in to his accounts for various reasons.
>
> [Mother's Counsel:] Now, what does Mr. Dewitt say in this series of exchanges concerning your getting out of the navy?
>
> [Father's Counsel:] For the purpose of the record, Judge, I object based upon privacy when you get into somebody's Facebook using their password.
>
> [The Court:] The objection is sustained.
>
> [Father's Counsel:] Thank you.

> [Mother's Counsel:] Your Honor, Mr. Dewitt
> has already looked at this, identified, and
> agreed he made all these statements.
>
> [The Court:] The objection is sustained.

Mother did not make an offer of proof at that time or anytime during the 24 October 2012 hearing.

At the 12 December 2012 hearing, Mother completed her testimony and her father, Alejandro Echeverry, testified on her behalf. After Mr. Echeverry's testimony, Mother's counsel requested a five-minute recess to locate the maternal grandmother of the child to testify as a witness. The following exchange between counsel and the court occurred after this recess:

> [The Court:] You folks decided to have her
> away from here rather than have her here for
> court this morning. You indicated it would
> be five minutes, and then you've indicated
> it would be longer than that. Is there
> further evidence from Mom?
>
> [Mother's Counsel:] Judge, I did not
> indicate five minutes. What I said was that
> she was at home. I needed to have time to
> make a call to try to get her going. We did.
> She was going when I got the update. She's
> en route right now. She's actually in the
> car. She'll arrive whatever time it takes to
> drive down here, normally about 20 minutes.
>
> [The Court:] Yes, sir. Is there further
> evidence from Mom?

[Mother's Counsel:] We would beg the Court's indulgence for that witness. That's our witness, Your Honor.

The trial court did not directly address Mother's counsel's request at that point, but instead moved on and asked whether there was rebuttal evidence from Father. Father then requested a temporary custody order until the written order was issued.

At that time, Mother's counsel asked to make a proffer of Defendant's Exhibit 1. The following exchange occurred:

> [Father's Counsel]: It's with an unrelated third party, Judge, who has not been here to testify.
>
> [Mother's Counsel]: It's several communications between the plaintiff and someone else, and I simply want to have Defendant's Exhibit 1 -- if Your Honor would admit it simply to put in the record to preserve that issue. I'm now asking the Court (inaudible) offer of proof.
>
> [The Court]: So after the close of the evidence, you're desiring to make an offer of proof regarding an item of evidence that was not admitted; is that correct?
>
> [Mother's Counsel]: Judge, you're putting me in a position of arguing with the Court. I don't want to do that. I didn't close the evidence. I have another witness I want to call. You apparently ruled. You didn't rule specifically. You just said, "We're moving on." But I have another witness. I never rested my case. You may be assuming that. I have not rested at this point. I'm making an offer of proof on Defendant's Exhibit 1.

[The Court]: [Mother's Counsel], I asked you several times if you had further evidence. The response every time was that some witness, that being the mother of the -- the maternal grandmother of the child, would be here from Connestee. We delayed the start of court this morning so you could call that witness so that witness could be here when she was called to take the witness stand. We then delayed court 30 minutes later for five minutes for you to check on her progress. You then reported that she was just leaving Connestee and it would be approximately 20 minutes, is my recollection, until she would arrive. I can ask you 100 more times. If you don't call a witness, I deem that you have no further evidence to present.

[Mother's Counsel]: Well, as I said, I can only say I never rested my case. (Inaudible), but I did not rest my case. I tender, that is an offer of proof, Defendant's Exhibit 1 excluded (inaudible). That's all.

[The Court]: Motion to tender that is denied, and that the evidence in this case has been heard, the case is closed. I will ask you again the question that I asked that precipitated this which was whether or not you agree to or object to the Court considering temporary custody at this time.

Mother noted for the record that the hearing began about 9:00 a.m. and ended at 9:47 a.m.

The trial court granted joint legal custody and granted primary physical custody to Mother, with secondary physical custody to Father. Father received custody for two weeks every other month, with an additional week during the summer. Father

must pick up the child from Mother at the beginning of his visitation, and Mother must pick up the child from Father at the end of his visitation. When the minor child begins Kindergarten, Father will have custody for six weeks in the summer and will alternate breaks and holidays with Mother. The order also required Father to pay child support of $716 per month.

On 22 January 2013, Mother filed timely notice of appeal with this Court.

## II. Jurisdiction

As a final judgment from a district court in a civil action, appeal lies with this Court under N.C. Gen. Stat. § 7A-27(b)(2) (2013).

## III. Analysis

Mother contends that the trial court erred by: (1) denying Mother's proffer of Defendant's Exhibit 1; and (2) closing the proceeding before Mother's final witness appeared. We disagree and affirm the trial court.

Rule 43 of our Rules of Civil Procedures provides as follows:

> In an action tried before a jury, if an objection to a question propounded to a witness is sustained by the court, the court on request of the examining attorney shall

> order a record made of the answer the witness would have given. . . . In actions tried without a jury the same procedure may be followed, except that the court upon request shall take and report the evidence in full, unless it clearly appears that the evidence is not admissible on any grounds or that the witness is privileged.

N.C. R. Civ. P. 43(c). "Rule 43(c) thus requires the trial court upon request, to allow the insertion of excluded evidence in the record." *Nix v. Allstate Ins. Co.*, 68 N.C. App. 280, 282, 314 S.E.2d 562, 564 (1984). We recognize the importance of allowing attorneys to make a proffer of evidence and that a judge "should be loath to deny an attorney his right to have an excluded answer placed in the record." *Id.* (quotation marks and citation omitted). In *Nix*, this Court found that the evidence in question should have been admitted. *Id.* at 283, 314 S.E.2d at 564. Because the proffer of testimony was excluded, however, this Court was unable to determine whether the exclusion was prejudicial and therefore remanded the case for a new trial. *Id.* at 283, 314 S.E.2d at 564–65.

Although we recognize the importance of allowing a proffer of evidence, "[t]he trial judge . . . is not required to allow insertion . . . in the record if it clearly appears that the proffered testimony is not admissible on any grounds." *Id.; see also* N.C. R. Civ. P. 43(c) (requiring a judge to accept a

proffer "unless it clearly appears that the evidence is not admissible on any grounds"); *see also Sheppard v. Sheppard*, 38 N.C. App. 712, 714, 248 S.E.2d 871, 874 (1978) ("In actions tried without a jury, such evidence need not be placed into the record if it is clearly not admissible on any grounds.").

Unlike *Nix*, in the present case we do not see anything on the face of the record that indicates Defendant's Exhibit 1 should have been admitted, and Mother makes no such argument in her brief. We decline to order a new trial in the absence of any argument that Defendant's Exhibit 1 was admissible. To hold otherwise would require a new trial any time a trial court refused a proffer of evidence, even where the trial court found the evidence was inadmissible and the appellant presents no argument to the contrary. Such a holding would be inconsistent with Rule 43. N.C. R. Civ. P. 43(c) (finding it unnecessary to take a proffer where "it clearly appears that the evidence is not admissible on any grounds").

Mother also argues that the trial court erred in closing the proceedings prior to the arrival of one of her witnesses. Mother cites generally to the North Carolina Constitution, Article I, Section 19, which states:

> No person shall be taken, imprisoned, or disseized of his freehold, liberties, or

> privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land. No person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin.

Mother asserts that the refusal of the trial court to allow more time for the arrival of Mother's witness deprived her of her "right to due process and fundamental fairness in presenting Defendant's case."

Mother's witness was not present when the hearing started and was, according to Mother's counsel, at home at the time of the hearing. After Mother presented all of her other evidence, Mother's counsel asked for a five minute recess, which was granted, and called the witness to "get her going." Mother's counsel stated that it would take approximately 20 minutes for the witness to arrive. There was no reason given as to why the witness was not present at the beginning of the hearing or why Mother was waiting to have the witness "get going" until the rest of the evidence had been presented. We see nothing in these facts that indicates a deprivation of due process or fundamental fairness.

Mother cites to two cases, the relevance and importance of which is not clear, as there are no pinpoint cites,

parentheticals, or argument relating to the cases. *See Roanoke Chowan Reg'l Hous. Auth. v. Vaughan*, 81 N.C. App. 354, 358-60, 344 S.E.2d 578, 581-82 (1986) (laying out due process requirements in the context of an eviction hearing); *State v. Tolley*, 290 N.C. 349, 356-57, 226 S.E.2d 353, 361 (1976) (upholding the trial court's denial of a continuance in a criminal case where the defendant claimed the trial court denied his right to compel out-of-state witnesses according to N.C. Gen. Stat. § 15A-811 Et seq.). "It is not the duty of this Court to supplement an appellant's brief with legal authority or arguments not contained therein." *Eaton v. Campbell*, ___ N.C. App. ___, ___, 725 S.E.2d 893, 894 (2012) (quotation marks and citation omitted); *see also Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005). Accordingly, we find no basis for Mother's claim that the trial court deprived Mother of her rights to due process and fundamental fairness by failing to leave the proceedings open.

## IV. Conclusion

For the foregoing reasons, the order of the trial court is AFFIRMED.

Judges ROBERT C. HUNTER and CALABRIA concur.

Report per Rule 30(e).