*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-AA-1243

CHRISTINE BURKHARDT, *et al.*, PETITIONERS,

v.

DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION, RESPONDENT,

and

KLINGLE CORPORATION, INTERVENOR.

On Petition for Review of a Decision and Order of the
District of Columbia Rental Housing Commission
(NV-1-09)

(Argued April 5, 2018                                          Decided December 20, 2018)

*Carol S. Blumenthal* for petitioner Christine Burkhardt.

*Blake Nelson*, with whom *Carol S. Blumenthal* was on the brief, for petitioners Blake Nelson and Wendy Nelson.

*Donald Wassem*, pro se.

*Jason Lederstein*, Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General at the time the brief was filed, and *Loren L. AliKhan*, Deputy Solicitor General at the time the brief was filed, were on the brief, for respondent District of Columbia Rental Housing Commission.

*Richard W. Luchs*, with whom *Debra F. Leege* was on the brief, for intervenor Klingle Corporation.

*Jonathan Levy* was on the brief for Legal Aid Society of the District of Columbia, *amicus curiae.*

*Joel Cohn*, *Dennis Taylor*, and *Umar Ahmed* were on the brief for the District of Columbia Office of the Tenant Advocate, *amicus curiae.*

Before EASTERLY and MCLEESE, *Associate Judges*, and RUIZ, *Senior Judge.*

MCLEESE, *Associate Judge*:  Petitioners Christine Burkhardt, Blake Nelson, Wendy Nelson, and Donald Wassem were tenants in the Kennedy-Warren, an apartment complex owned by intervenor Klingle Corporation.  They challenge an order of the Rent Administrator authorizing Klingle to issue notices requiring petitioners to temporarily vacate their apartments so that Klingle could renovate.  We conclude that we lack jurisdiction, and we therefore dismiss the petition.

**I.**

We turn first to the provisions of Title 42 of the D.C. Code that describe the process by which a housing provider can temporarily recover possession of a rental unit for the purpose of renovation.  A housing provider must apply to the Rent Administrator for approval.  D.C. Code § 42-3505.01 (f)(1)(A)(i) (2018 Supp.).  Such an application must include an explanation of why the renovations are necessary and cannot be made while the unit is occupied; a timetable for renovations;

and a relocation plan for the tenant. D.C. Code § 42-3505.01 (f)(1)(B)(i), (iv), (v). The relocation plan must provide for each tenant to be placed in another unit within the housing accommodation or justify why such placement is not practicable. D.C. Code § 42-3505.01 (f)(1)(B)(v)(II).

After the housing provider gives notice of the application, tenants have twenty-one days to submit comments. D.C. Code § 42-3505.01 (f)(1)(A)(ii). An independent agency, the Office of the Tenant Advocate (OTA), is authorized to investigate whether the housing provider has complied with applicable statutory requirements and whether the interests of the tenants are being protected. D.C. Code § 42-3505.01 (f)(1)(C)(ii); D.C. Code § 42-3531.02 (2012 Repl.). The Chief Tenant Advocate must provide notice to each tenant of the tenant's rights during the application process. D.C. Code § 42-3505.01 (f)(1)(C)(i). Tenants can seek help from the Chief Tenant Advocate concerning their legal rights and interests. D.C. Code § 42-3505.01 (f)(1)(C)(i)(III). Additionally, before the application is approved, an inspector from the Department of Consumer and Regulatory Affairs must inspect the building to determine "the accuracy of material statements in the application" and must report the inspector's findings to the Rent Administrator and the Chief Tenant Advocate. D.C. Code § 42-3505.01 (f)(1)(A)(iii).

Before approving an application, the Rent Administrator must find in writing, among other things, that the proposed renovations cannot safely or reasonably be made while the unit is occupied and that the renovation is in the interest of each affected tenant. D.C. Code § 42-3505.01 (f)(1)(A)(v)(I), (III). If an application is approved, the housing provider may issue a notice to the tenant to vacate the unit within 120 days. D.C. Code § 42-3505.01 (f)(1)(D). If the tenant does not vacate the unit, the housing provider must file a separate civil action to obtain possession. D.C. Code § 42-3505.01 (f)(1)(D). Once the renovations are complete, the tenant has an absolute right to reoccupy the unit. D.C. Code § 42-3505.01 (f)(2).

After an application has been approved, but before the tenant has vacated the unit, the Rent Administrator is directed to rescind its approval if the housing provider does not comply with applicable requirements. D.C. Code § 42-3503.01 (f)(5). If the tenant has vacated the unit, the tenant may bring an action in court to seek to require the housing provider to comply with applicable requirements. D.C. Code § 42-3501.05 (f)(6).

A tenant may challenge the Rent Administrator's approval of a housing provider's application by appealing to the Rental Housing Commission (RHC). D.C. Code § 42-3502.02 (a)(2) (2018 Supp.). Under D.C. Code § 42-3502.19 (2012 Repl.), persons aggrieved by a decision of the RHC may seek review in this court.

## II.

Except as identified, the following facts are undisputed. In July 2009, Klingle applied for approval to issue notices requiring petitioners and other tenants to temporarily vacate the Kennedy-Warren so that Klingle could perform renovations to replace aging plumbing, heating, and electrical systems. Klingle asserted that the tenants could not remain in their units during the renovations because the heat, lighting, water, and electricity would need to be turned off, and wall plaster and other fixtures would need to be removed. Klingle attached an engineer's report to document the condition of the building and the proposed work. Klingle also included a timetable and plan to temporarily relocate tenants within the Kennedy-Warren.

Petitioners and other tenants filed comments with the Rent Administrator challenging Klingle's need to renovate and expressing concern about the loss of space in their units as a result of the planned renovation. The tenants requested a "full adjudicatory hearing" on the application. The Rent Administrator denied the request for a hearing and approved Klingle's application. The Rent Administrator concluded that a hearing would be premature, because tenants are entitled to a hearing to challenge notices to vacate that have actually been issued, not to challenge applications for permission to issue notices to vacate. Petitioners appealed to the Rental Housing Commission. The RHC affirmed the order approving Klingle's application. In affirming, the RHC concluded among other things that petitioners did not have a right to a hearing before the Rent Administrator.

**III.**

Petitioners raise a number of challenges to the approval of Klingle's application. We do not address those challenges on the merits, however, because we conclude that we do not have jurisdiction over the petition.

## A.

As previously noted, D.C. Code § 42-3502.19 provides that decisions of the RHC are reviewable in this court. Moreover, the RHC's order in this case instructed the parties that review should be sought in this court. By congressional statute, however, this court's direct review over agency action is generally limited to "contested cases." D.C. Code § 2-510 (a) (2016 Repl.). Moreover, the District of Columbia Council lacks authority to "bypass" the contested-case requirement. *Woodroof v. Cunningham*, 147 A.3d 777, 784 (D.C. 2016). Because § 42-3502.19 was enacted by the D.C. Council, D.C. Law 6-10, § 219, 32 D.C. Reg. 3089, 3114 (1985), we have jurisdiction to review the ruling of the RHC in this case only if the proceeding before the RHC was a contested case.

We note that some of the former duties of the Rent Administrator have been transferred to the Office of Administrative Hearings (OAH). D.C. Code § 2-1831.03 (b-1)(1) (2018 Supp.). The parties dispute whether the ruling of the Rent Administrator in this case should instead have been made by the OAH. We need not delve into that dispute. The decision in this case was in fact made by the RHC. Whether we have jurisdiction to directly review that decision turns on whether the

matter was a contested case before the RHC. For reasons that we explain, we conclude that the matter was not a contested case before the RHC and that review therefore lies in the Superior Court, not this court. If the Superior Court were to determine that the decision at issue should have been made by the OAH, then the matter would presumably be sent to OAH for decision. Once the OAH ruled, a party seeking review of that ruling would need to determine whether the matter was a contested case before the OAH in order to determine where to seek judicial review.

With exceptions not presently applicable, a "contested case" is a "proceeding before . . . any agency in which the legal rights, duties, or privileges of specific parties are required by any law (other than this subchapter), or by constitutional right, to be determined after a hearing." D.C. Code § 2-502 (8) (2018 Supp.). For a matter to be a contested case, "a trial-type hearing" must be "required by the agency's enabling statute, its implementing regulations, or constitutional right." *Owens v. District of Columbia Water & Sewer Auth.*, 156 A.3d 715, 721 (D.C. 2017) (internal quotation marks omitted). Thus, whether we have jurisdiction to directly review the ruling of the RHC turns on whether tenants have a right to a trial-type hearing before the Rent Administrator in connection with a temporary-eviction application.

> Whether an administrative proceeding is a contested case is a question of law. Although we have said that we decide that question de novo, in this case . . . the answer to the question turns on the interpretation of both a statutory provision that the [agency] administers and the [agency's] procedural regulations. We defer to the [agency's] informed interpretation of the statute it administers, as long as that interpretation is reasonable and not plainly wrong or inconsistent with the statute's legislative purpose. Similarly, the court generally defers to an agency's interpretation of its own regulations unless that interpretation is plainly erroneous or inconsistent with the regulations.

*Farrell v. District of Columbia Police & Firefighters Ret. & Relief Bd.*, 151 A.3d 490, 493 (D.C. 2017) (citations, ellipsis, and internal quotation marks omitted). *See also, e.g.*, *Johnson v. District of Columbia Dep't of Emp't Servs.*, 167 A.3d 1237, 1240 (D.C. 2017) ("Although this court generally resolves legal questions de novo, the court ordinarily accords deference to an agency's interpretation of a statute that the agency administers, unless the interpretation is unreasonable or is inconsistent with the statutory language or purpose.") (internal quotation marks omitted).

**B.**

We look first to the Rental Housing Act and applicable regulations. The Act outlines extensive procedures applicable to temporary-eviction applications, but

those procedures do not explicitly provide for a hearing. D.C. Code § 42-3505.01 (f). Moreover, the Act explicitly provides for contested-case hearings with respect to a number of other determinations made by the Rent Administrator. D.C. Code § 42-3502.16 (a)-(c), (g) (2012 Repl.). When the legislature explicitly provides for a hearing in some instances but not others, the omission of a hearing requirement is generally considered "conscious, not inadvertent." *Donnelly Assocs. v. District of Columbia Historic Pres. Review Bd.*, 520 A.2d 270, 276 (D.C. 1987).

Many of the Act's procedural protections were added by the D.C. Council in 2006, in the Tenant Evictions Reform Amendment Act, D.C. Law 16-140, 53 D.C. Reg. 3686 (2006). The legislative history of that provision supports a conclusion that the omission of a hearing requirement was deliberate. D.C. Council, Report on Bill 16-556 (Feb. 10, 2006). The Committee Report recounts the testimony of three witnesses who recommended that tenants should have the opportunity to request a hearing before a temporary-eviction application is granted. *Id.* at 5-6. The mark-up of the bill did not include a hearing provision, however, but did include a twenty-one-day comment period, which the committee thought was integral to determining whether proposed renovations would be in the interest of the tenants. *Id.* at 7, attach. 4.

Petitioners argue that D.C. Code § 42-3502.04 (2012 Repl.), the provision that outlines the duties of the Rent Administrator, requires a hearing for temporary-eviction applications. The language of that provision is permissive, however, rather than mandatory: "The Rent Administrator shall have jurisdiction over those complaints and petitions . . . which may be disposed of through administrative proceedings" and "may employ . . . hearing examiners . . . reasonably necessary to carry out this chapter." D.C. Code § 42-3502.04 (c), (d)(1). As we have previously held, the "provision of . . . a hearing does not satisfy the contested case requirement if it is merely discretionary with the agency; the hearing . . . must be compelled." *J.C. & Assocs. v. District of Columbia Bd. of Appeals & Review*, 778 A.2d 296, 301 (D.C. 2001) (internal quotation marks omitted).

In significant part for the reasons we have just discussed, the RHC concluded that the Act does not provide for a right to a hearing before the Rent Administrator rules on a temporary-eviction application. We hold that the RHC's conclusion "reflects a reasonable interpretation of [the Act's] provisions considered as a whole." *Farrell*, 151 A.3d at 494.

**C.**

We next consider the Rent Administrator's regulations. We are aware of two regulations directly addressing the right to a hearing in matters before the Rent Administrator. The first, which provides for hearings in certain eviction matters before the Rent Administrator, is permissive, not mandatory. 14 DCMR § 4300.5 (2018) ("A hearing may be conducted . . . ."). The second, which applies more generally to "petitions," does not independently confer a right to a hearing, instead simply cross-referencing such rights to a hearing as a party has under the Act and other regulations. 14 DCMR § 3903.1 (2018) ("The parties to petitions before the Rent Administrator have a right to a hearing in accordance with the provisions of the Act and chapter 40 of this title."). The parties dispute whether either of these two regulations applies to temporary-eviction applications. We need not decide that dispute, however, because even if the regulations apply they do not independently mandate a trial-type proceeding.

Petitioners also rely on a regulation providing that if the Rent Administrator holds a hearing, the hearing must include the procedural protections applicable to contested cases. 14 DCMR § 4000.2 (2018). That regulation, however, does not

create an entitlement to a hearing, but rather provides an entitlement to certain procedures if a hearing is given. *See Farrell*, 151 A.3d at 494 (concluding that agency regulation did not grant right to trial-type hearing, because regulation did "not by its terms require the Board to take testimony, but rather require[d] that if the Board d[id] take testimony, that testimony must be under oath or affirmation").

In sum, we do not understand the Rent Administrator's regulations to provide tenants with a right to a trial-type hearing in connection with temporary-eviction applications. The RHC did not explicitly address these regulations, perhaps because petitioners did not rely on them before the RHC. Because we think that the language of the regulations is clear, and because we see no reason to believe that remanding the issue to the RHC to address the interpretation of the regulations would alter the RHC's conclusions, we need not undertake such a remand. *See, e.g.*, *Apartment & Office Bldg. Ass'n v. Pub. Serv. Comm'n*, 129 A.3d 925, 933 (D.C. 2016) (remand not required where remand would be pointless because "it is apparent the agency would reach the same result") (brackets and internal quotation marks omitted); *id.* ("Although it could be argued that we should remand for the agency to consider itself whether the Draft Chapter is binding, we see no need to do so where it is clear what the agency's decision has to be. As the Supreme Court has clarified, courts are not

required to remand in futility.") (brackets, ellipsis, and internal quotation marks omitted).

## D.

Finally, we consider whether the Constitution requires a trial-type hearing in connection with temporary-eviction applications. The RHC did not fully consider that issue, deeming it to have been inadequately presented. Because the issue affects our jurisdiction, we address it. Moreover, we would not owe the RHC deference on the issue. *See, e.g.*, *Silva-Rengifo v. Attorney Gen. of U.S.*, 473 F.3d 58, 63 (3d Cir. 2007) (in reviewing agency action, court decides constitutional issues de novo).

"The procedural due process guarantee imposes procedural requirements on the government before it deprives individuals of protected interests." *Richard Milburn Pub. Charter Alt. High Sch. v. Cafritz*, 798 A.2d 531, 541 (D.C. 2002). This court has adopted a two-part inquiry to determine whether a contested-case hearing is constitutionally mandated. *Id.* First, we decide whether the governmental action at issue affects an interest that falls within the Fifth Amendment's protection of "life,

liberty, and property." *Id.* Second, "if protected interests are at issue, we must then determine what procedures are required to satisfy due process." *Id.*

Generally, the requirements of the Due Process Clause are met when the person whose protected interest is at stake is afforded an adequate pre-deprivation opportunity to contest the action at issue. *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 101 (1993) ("[T]he availability of a predeprivation hearing constitutes a procedural safeguard sufficient by itself to satisfy the Due Process Clause.") (ellipsis and internal quotation marks omitted). Petitioners do not dispute that they could be physically evicted only if the housing provider filed an action for possession and established in judicial proceedings an entitlement to temporary possession of the tenants' units. *See, e.g.*, *Hinton v. Sealander Brokerage Co.*, 917 A.2d 95, 102 (D.C. 2007) ("The law is clear in this jurisdiction, moreover, that a landlord is prohibited from using self-help to evict a tenant and must proceed instead by using the process provided by law.").

Petitioners challenge the adequacy of an action for possession as a basis for determining the housing provider's entitlement to temporarily evict tenants. Specifically, petitioners argue that (1) they might be estopped in the action for

possession, based on the Rent Administrator's approval of the temporary-eviction application; (2) the Landlord and Tenant Court might be required to defer to the Rent Administrator's approval; (3) by refusing to voluntarily vacate in response to the notice to vacate, they would risk permanent eviction; and (4) permanent eviction is the only remedy available in Landlord and Tenant Court. We have a number of doubts about petitioners' arguments. *See, e.g.*, *Ill. Farmers Ins. Co. v. Hagenberg*, 167 A.3d 1218, 1225 (D.C. 2017) ("The party against whom collateral estoppel is invoked must have had a full and fair opportunity to litigate the issue . . . .") (internal quotation marks omitted); D.C. Code § 42-3505.01 (f)(2) (tenant has "absolute right to reoccupy the rental unit"); *Chacon v. Litke*, 105 Cal. Rptr. 3d 214, 223-26 (Ct. App. 2010) (where tenant refused to voluntarily vacate apartment to permit landlord to make repairs, requiring landlord to follow eviction procedures, tenant was still entitled to reoccupy unit once repairs were complete). We need not definitively resolve these issues at the present juncture, however. If petitioners are correct that the Due Process Clause entitles them to greater protections than are ordinarily available in an action for possession in Landlord and Tenant Court, the logical remedy would be to require those protections in the action for possession. It would not make sense to instead create a separate right, not contemplated by statute or regulation, to a hearing before issuance of a notice to vacate was approved. We therefore can leave for another day the question of precisely what protections the

Due Process Clause requires in an action for possession based on a notice of temporary eviction.

Finally, we note that our conclusion that the Due Process Clause does not require a trial-type hearing before the Rent Administrator approves a temporary-eviction application is consistent with numerous decisions holding that the availability of a judicial trial to contest eviction from a rental unit satisfies the requirements of the Due Process Clause.  *See, e.g.*, *Perry v. Royal Arms Apartments*, 729 F.2d 1081, 1082 (6th Cir. 1984) (per curiam) (tenants did not have due-process right to federal administrative hearing before initiation of state eviction proceeding); *Johnson v. Tamsberg*, 430 F.2d 1125, 1126 (4th Cir. 1970) (same; "tenants are not actually ejected until basic due process requisites are satisfied" in state judicial proceeding); *Roanoke Chowan Reg'l Hous. Auth. v. Vaughan*, 344 S.E.2d 578, 581-82 (N.C. Ct. App. 1986) (same); *Hudsonview Terrace, Inc. v. Maury*, 419 N.Y.S.2d 409, 410 (App. Term 1979) (same; "The tenant is entitled to notice of the alleged causes for eviction, witness confrontation, counsel and a decision only after evidence adduced at a hearing.  There need, however, be no hearing other than that afforded by normal judicial process.  The relationship of landlord and tenant [is] traditionally dealt with in the State Courts and where basic due process requisites are complied

with, no prior administrative hearing need be held."); *Hous. Auth. v. Moore*, 284 N.E.2d 456, 458-60 (Ill. App. Ct. 1972) (same).

In sum, we conclude that tenants are not entitled to a contested-case hearing before the Rent Administrator decides a temporary-eviction application. We therefore lack jurisdiction to entertain this petition. This jurisdictional bar does not deprive parties of judicial review of orders granting or denying temporary eviction applications, but rather directs parties to the Superior Court in the first instance. Thus, the issue might arise in connection with a proceeding in Superior Court instituted by a landlord seeking to enforce an agency-approved application to temporarily evict tenants. Alternatively, tenants might initiate an action to challenge an administrative decision granting a temporary-eviction application. A landlord whose application is denied by the agency also could appeal to the Superior Court. *Nunnally v. District of Columbia Metro. Police Dep't*, 80 A.3d 1004, 1008 (D.C. 2013) ("[I]f a claim falls outside of the definition of a contested case, any party aggrieved by an agency's decision may initiate an appropriate equitable action in the Superior Court to seek redress.") (brackets and internal quotation marks omitted). In the present case, although a request for review in the Superior Court would seemingly be untimely, petitioners were told both by statute and by the RHC to seek review in this court. Under the circumstances, a prompt request for review in

Superior Court would properly be viewed as timely. *Mathis v. District of Columbia Hous. Auth.*, 124 A.3d 1089, 1104-06 (D.C. 2015) (equitably tolling time to seek review of agency action where litigant was misled by agency as to where to seek review).

For the foregoing reasons, the petition for review is dismissed.

*So ordered.*