IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-1155

 Filed: 17 September 2019

Wake County, No. 18 CVD 5405

RALEIGH HOUSING AUTHORITY, Plaintiff,

 v.

PATRICIA WINSTON, Defendant.

 Appeal by defendant from order entered 26 June 2018 by Judge Michael

Denning in Wake County District Court. Heard in the Court of Appeals 22 May 2019.

 The Francis Law Firm, PLLC, by Charles T. Francis and Ruth A. Sheehan, for
 plaintiff-appellee.

 Legal Aid of North Carolina, Inc., by Thomas Holderness, Daniel J. Dore, and
 Darren Chester, for defendant-appellant.

 ZACHARY, Judge.

 Defendant Patricia Winston appeals from the district court’s order granting

immediate possession of Defendant’s leased premises to Plaintiff Raleigh Housing

Authority. We affirm.

 Background

 On 17 April 2017, Defendant entered into a twelve-month Lease Agreement

with Plaintiff for the rental of a one-bedroom apartment located in the Walnut

Terrace Community in Raleigh. Between October and December of 2017, Plaintiff

received three written, and multiple oral, complaints from Defendant’s neighbors
 RALEIGH HOUS. AUTH. V. WINSTON

 Opinion of the Court

concerning noise disturbances coming from Defendant’s apartment. Specifically, in

the written complaints, Defendant’s neighbors described being awoken late at night

by “stomping, fighting, cursing and knocking over furniture” as well as “loud music.”

One complaint further alleged that it “look[ed] like drug exchanges [were] going on.”

 When the complaints continued after a written warning, on 1 December 2017

Plaintiff’s property manager sent Defendant a Notice of Lease Termination for

violation of Paragraph 9(f) of the parties’ Lease Agreement, which required

Defendant “[t]o conduct . . . herself and cause other persons who are on the premises

with [her] consent to conduct themselves in a manner which [would] not disturb the

neighbors’ peaceful enjoyment of their accommodations.”

 Thereafter, Defendant had an informal meeting with Plaintiff’s property

manager, during which Defendant informed the manager that the complaints had

arisen from incidents of domestic violence committed against Defendant by her

former partner, Walter Barnes. Defendant indicated that she had since obtained a

Domestic Violence Protective Order against Mr. Barnes, thereby preventing him from

returning to the Leased Premises and causing additional disturbances. Based on

Defendant’s explanation for the noise complaints, Plaintiff rescinded the lease

termination.

 -2-
 RALEIGH HOUS. AUTH. V. WINSTON

 Opinion of the Court

 However, Plaintiff soon received another written complaint from a neighbor of

Defendant describing a disturbance caused by Defendant’s conduct on the late

evening and early morning hours of 5 February and 6 February 2018, to wit:

 I was awaken [sic] out of my sleep at 1:00 A.M. from
 my neighbor upstairs with loud fussing, cursing and
 yelling, which then proceeded down the steps, outside my
 door and continuing still into the parking lot.

 She approached me the next morning . . . when I
 came home for my break from her balcony, yelling saying
 that I’m trying to get her put out, and I told her no I wasn’t.
 I can’t continue letting them keep me awake when I have
 to get up at 3:00 A.M. to go to work. I’m sleepy at work
 because I’m not getting any sleep at night.

 She told me that I’m not suppose[d] to report
 anything to the office, that I should be telling her and not
 the office. I’ve spoken to her about this on several occasions
 and she apologized and said that it would not happen
 again, but it still continues to happen.

 She told me that if I continue reporting this to the
 office, they will evict both she and I.

 Following this complaint, on 13 February 2018, Plaintiff sent Defendant a

second Notice of Lease Termination notifying Defendant that Plaintiff

 intends to terminate your Lease to the premises . . . under
 the provisions in your Lease Agreement and pursuant to
 Raleigh Housing Authority’s Grievance Procedure due to
 the following:

 Inappropriate Conduct—Multiple Complaints

 9. OBLIGATIONS OF RESIDENT
 F. To conduct himself/herself and cause other

 -3-
 RALEIGH HOUS. AUTH. V. WINSTON

 Opinion of the Court

 persons who are on the premises with the Resident’s
 consent to conduct themselves in a manner which will not
 disturb the neighbors’ peaceful enjoyment of their
 accommodations.

 The Notice of Lease Termination further notified Defendant that

 1. You have the right to request a private conference
 with Carol McTearnen, Property Manager of your
 development, to discuss informally the reasons for the
 proposed termination and to determine whether the
 dispute may be settled without a grievance hearing. You
 must contact the manager on or before February 23, 2018.
 If you do not request a private conference with the manager
 on or before February 23, 2018, you may not be entitled
 to a grievance hearing before the Hearing Officer as
 described below.

 2. You have the right to examine Raleigh Housing
 Authority documents directly relevant to the termination
 or eviction. A request to examine such documents should
 be made in writing and delivered to the development
 manager. The manager will notify you of the time and place
 for this review.

 3. If after a private conference as described above you
 are not satisfied with the decision of the Housing
 Authority, you will have the right to request a grievance
 hearing of your dispute before the Hearing Officer. The
 development manager will inform you how to request such
 a hearing at the informal private conference described
 above.
 In response, on 17 February 2018, Defendant sent a letter to Plaintiff, in which

she acknowledged that “there was a disturbance at my address which was caused

entirely by me.” Defendant further conceded that “[t]here are others who visit me who

make too much noise,” but she indicated that she “placed trespass orders on them.”

 -4-
 RALEIGH HOUS. AUTH. V. WINSTON

 Opinion of the Court

However, Defendant had “neither received a no[-]trespass order for any of the

individuals nor ha[d] she made any affirmative efforts to do so” by the time of the 25

June 2018 district court hearing in this case.

 Thereafter, Defendant followed the procedures outlined in the Notice of Lease

Termination, and a grievance hearing was held on 6 March 2018. On 10 March 2018,

the Hearing Officer affirmed Plaintiff’s decision to terminate Defendant’s Lease

Agreement. Plaintiff then filed a Complaint in Summary Ejectment, which was heard

before the Honorable Michael Denning in Wake County District Court. By order

entered 26 June 2018, Judge Denning affirmed Plaintiff’s decision to terminate the

Lease Agreement and granted Plaintiff immediate possession of the Leased Premises.

Defendant timely filed notice of appeal to this Court.

 On appeal, Defendant argues that the trial court erred in granting Plaintiff

immediate possession of the Leased Premises because (1) there was insufficient

evidence that Defendant breached her lease so as to warrant its termination, and (2)

the Notice of Lease Termination did not satisfy Defendant’s due process right to

notice of her alleged violations.

 Standard of Review

 “The standard of review on appeal from a judgment entered after a non-jury

trial is whether there is competent evidence to support the trial court’s findings of

fact and whether the findings support the conclusions of law and ensuing judgment.”

 -5-
 RALEIGH HOUS. AUTH. V. WINSTON

 Opinion of the Court

Cartin v. Harrison, 151 N.C. App. 697, 699, 567 S.E.2d 174, 176 (quotation marks

omitted), disc. review denied, 356 N.C. 434, 572 S.E.2d 428 (2002). It is well-settled

law that “the appellate courts are bound by the trial courts’ findings of fact where

there is some evidence to support those findings, even though the evidence might

sustain findings to the contrary.” Chicago Title Ins. Co. v. Wetherington, 127 N.C.

App. 457, 460, 490 S.E.2d 593, 596 (1997) (quotation marks omitted), disc. review

denied, 347 N.C. 574, 498 S.E.2d 380 (1998).

 Discussion

 We first address Defendant’s argument that Plaintiff’s Notice of Lease

Termination violated Defendant’s due process right to notice. Defendant maintains

that the Notice’s reference to Paragraph 9(f) of the Lease Agreement was insufficient,

in that it failed to delineate the particular conduct that she allegedly committed in

violation of that provision of the Agreement. We disagree that due process required

the initial Notice of Lease Termination to describe the specific conduct at issue.

 “A tenant in a publicly subsidized housing project is entitled to due process

protection,” including adequate notice of lease termination. Roanoke Chowan Reg’l

Hous. Auth. v. Vaughan, 81 N.C. App. 354, 358, 344 S.E.2d 578, 581, disc. review

denied, 317 N.C. 336, 347 S.E.2d 439 (1986). To that effect, federal regulation

provides that a public housing agency’s

 notice of lease termination to the tenant shall state specific
 grounds for termination, and shall inform the tenant of the

 -6-
 RALEIGH HOUS. AUTH. V. WINSTON

 Opinion of the Court

 tenant’s right to make such reply as the tenant may wish.
 The notice shall also inform the tenant of the right . . . to
 examine PHA documents directly relevant to the
 termination or eviction. When the PHA is required to
 afford the tenant the opportunity for a grievance hearing,
 the notice shall also inform the tenant of the tenant’s right
 to request a hearing in accordance with the PHA’s
 grievance procedure.

24 C.F.R. § 966.4(l)(3)(C)(ii).

 As explained above, Defendant interprets the requirement that a notice of

lease termination state the “specific grounds for termination” as necessitating a

description of the specific conduct upon which the termination is based. Not only does

this interpretation directly contradict the plain language of the pertinent federal

regulation, but this Court has also indicated that a notice of lease termination will

satisfy the demands of due process so long as the information provided “is sufficient

to put [the tenant] on notice regarding the specific lease provision deemed to have

been violated.” Vaughan, 81 N.C. App. at 358, 344 S.E.2d at 581 (emphasis added).

 In the instant case, the Notice of Lease Termination identified—and quoted—

the specific provision serving as the basis for Defendant’s lease termination. The

Notice of Lease Termination also advised Defendant of her right to examine the

pertinent materials and documentation prior to the holding of her initial grievance

hearing. Thus, the Notice of Lease Termination to Defendant was in compliance with

the governing federal regulation. The trial court did not err in concluding that

“Defendant ha[d] been afforded due process and been given adequate notice of her

 -7-
 RALEIGH HOUS. AUTH. V. WINSTON

 Opinion of the Court

violations of Paragraph 9(f) of the Lease.” See id. at 359, 344 S.E.2d at 581 (“Before

an eviction determination is administratively made, due process requires, succinctly

stated: (1) timely and adequate notice detailing the reasons for a proposed

termination, (2) an opportunity on the part of the tenant to confront and cross-

examine adverse witnesses, (3) the right of a tenant to be represented by counsel,

provided by him to delineate the issues, present the factual contentions in an orderly

manner, conduct cross-examination and generally to safeguard his interests, (4) a

decision, based on evidence adduced at the hearing, in which the reasons for decision

and the evidence relied on are set forth, and (5) an impartial decision maker.”

(emphasis added)). Accordingly, the trial court’s order cannot be disturbed on grounds

of improper notice.

 We next address Defendant’s argument that the trial court erred in concluding

that Plaintiff was entitled to immediate possession of the Leased Premises.

Specifically, Defendant argues that (1) the 2017 complaints were the result of

domestic violence, and, therefore, could not serve as the basis for a lease termination,

and (2) the February 2018 complaint, on its own, does not support a conclusion that

Defendant breached a material term of the Lease Agreement as to warrant

termination of the Lease.

 Federal law provides that a “public housing agency may not terminate [a]

tenancy except for serious or repeated violation of the terms or conditions of the

 -8-
 RALEIGH HOUS. AUTH. V. WINSTON

 Opinion of the Court

lease.” 42 U.S.C. § 1437d(l)(5). In addition, for termination to be appropriate, the

serious or repeated violation must be of a “material term[ ] of the lease.” 24 C.F.R. §

966.4(l)(2)(i).

 “Material terms” of a lease include terms requiring a tenant “[t]o act, and cause

household members or guests to act, in a manner which will not disturb other

residents’ peaceful enjoyment of their accommodations.” See 24 C.F.R. §

966.4(l)(2)(i)(B) & (f)(11). Thus, Paragraph 9(f) of the Lease Agreement in the instant

case constitutes a “material term” as defined in the applicable regulations.

 Substantial evidence in the record supports Defendant’s repeated violation of

Paragraph 9(f), thus supporting the trial court’s decision to affirm the termination of

Defendant’s tenancy and order that Plaintiff be granted immediate possession of the

Leased Premises.

 Though the parties concede that several of the 2017 noise complaints were the

result of domestic violence, and therefore may not serve as the basis of a lease

termination, see 34 U.S.C. § 12491(b)(2),1 Plaintiff presented substantial evidence of

repeated incidents that were not the result of domestic violence. This evidence

included (1) the early-morning altercation on 6 February 2018, which Defendant

admitted “was caused entirely by me”;2 (2) Defendant’s acknowledgment of “others

 1 Accord N.C. Gen. Stat. § 42-42.2 (2017).
 2 Defendant’s 17 February 2018 letter accepting responsibility referenced an incident that
occurred on 11 February 2018. However, at trial, defense counsel noted that “there’s only one incident,”

 -9-
 RALEIGH HOUS. AUTH. V. WINSTON

 Opinion of the Court

who visit me who make too much noise”; (3) Defendant’s conduct later in the day on

6 February 2018, in which she approached her neighbor “from her balcony, yelling

saying that I’m trying to get her put out, . . . [and] that if I continue reporting this to

the office, they will evict both she and I”; and (4) the November 2017 complaint3

referencing “loud music” and that it “look[ed] like drug exchanges [were] going on.”

These acts continuously impeded Defendant’s neighbors’ ability to peacefully enjoy

their accommodations. The record therefore contains substantial evidence of repeated

violations of Paragraph 9(f) of the Lease Agreement to support the trial court’s

conclusion that Plaintiff was entitled to immediate possession of the property.

 Accordingly, we affirm the trial court’s order.

 AFFIRMED.

 Judges BRYANT and TYSON concur.

and that Defendant was actually “referring to the incident that occurred on February [6th].” Thus,
Defendant either admitted to the 6 February 2018 incident, or she admitted to yet another incident
constituting a violation of Paragraph 9(f) of the Lease Agreement.
 3 We reject Defendant’s argument that the written complaints submitted to Plaintiff in the fall

and winter of 2017 did not fall under the “business record” exception to the hearsay rule and were
therefore inadmissible. Not only did Defendant effectively admit to the conduct described therein, but
the property manager’s testimony sufficiently established that Plaintiff kept records of such
complaints submitted by its tenants in the course of Plaintiff’s regularly conducted business activity.
See N.C. Gen. Stat. § 8C-1, Rule 803(6).

 - 10 -